*Attorney Grievance Commission of Maryland v. William Michael Jacobs*, Misc. Docket AG No. 13, September Term, 2017.

**ATTORNEY DISCIPLINE** – Attorney's incompetence, lack of diligence in handling his client's matters, failure to communicate with his client, failure to properly terminate representation resulting in an abandonment of client matters, knowing misrepresentations of material fact to Bar Counsel and his client, and knowing failure to respond to Bar Counsel's inquiries warrant the sanction of disbarment. Attorney's conduct violated Rules 19-301.1, 19-301.3, 19-301.4, 19-301.16, 19-308.1, and 19-308.4.

Circuit Court for Howard County
Case No. 13-C-17-111733
Argued: April 5, 2018

IN THE COURT OF APPEALS

OF MARYLAND

Misc. Docket AG No. 13

September Term, 2017

_____

ATTORNEY GRIEVANCE COMMISSION
OF MARYLAND

v.

WILLIAM MICHAEL JACOBS

_____

Barbera, C.J.
Greene,
Adkins,
McDonald,
Watts,
Hotten,
Getty,

JJ.

_____

Opinion by Greene, J.

_____

Filed: May 21, 2018

On May 31, 2017, the Attorney Grievance Commission of Maryland ("Petitioner" or "Bar Counsel"), acting pursuant to Maryland Rule 19-721, filed a "Petition for Disciplinary or Remedial Action" against William Michael Jacobs ("Respondent"). The petition arose out of Respondent's representation of one client in two separate personal injury matters. Petitioner alleged that Respondent violated Maryland Attorneys' Rules of Professional Conduct ("MARPC" or "Rule")[1] specifically, 19-301.1 (Competence),[2] 19-301.3 (Diligence),[3] 19-301.4 (Communication),[4] 19-301.16 (Declining or Terminating

---

[1] On July 1, 2016, the Maryland Lawyers' Rules of Professional Conduct ("MLRPC") were renamed the Maryland Attorneys' Rules of Professional Conduct ("MARPC") and codified in Title 19 of the Rules. At the time of Respondent's misconduct, the Rules were codified as MLRPC. At the time of Bar Counsel's filing and the relevant proceedings, the Rules were codified as MARPC. We will refer to the Rules as they are currently codified in Title 19.

[2] MARPC 19-301.1 provides: "An attorney shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

[3] MARPC 19-301.3 provides: "An attorney shall act with reasonable diligence and promptness in representing a client."

[4] MARPC 19-301.4 provides, in relevant part:
     (a) An attorney shall:
          (1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 19-301.0 (f) (1.0), is required by these Rules;
          (2) keep the client reasonably informed about the status of the matter;
          (3) promptly comply with reasonable requests for information; and
          (4) consult with the client about any relevant limitation on the attorney's conduct when the attorney knows that the client expects assistance not permitted by the Maryland Attorneys' Rules of Professional Conduct or other law.
     (b) An attorney shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

Representation),[5] 19-308.1 (Bar Admission and Disciplinary Matters),[6] and 19-308.4

(Misconduct).[7]

This Court referred the matter to the Honorable Mary M. Kramer of the Circuit

Court for Howard County for a hearing and to render findings of fact and conclusions of

---

[5] MARPC 19-301.16 provides, in relevant part:
> (d) Upon termination of representation, an attorney shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of another attorney, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The attorney may retain papers relating to the client to the extent permitted by other law.

[6] MARPC 19-308.1 provides:
> An applicant for admission or reinstatement to the bar, or an attorney in connection with a bar admission application or in connection with a disciplinary matter, shall not:
> (a) knowingly make a false statement of material fact; or
> (b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 19-301.6 (1.6).

[7] MARPC 19-308.4 provides, in relevant part:
> It is professional misconduct for an attorney to:
> (a) violate or attempt to violate the Maryland Attorneys' Rules Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
> (b) commit a criminal act that reflects adversely on the attorney's honesty, trustworthiness or fitness as an attorney in other respects;
> (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation; [or]
> (d) engage in conduct that is prejudicial to the administration of justice[.]

2

law pursuant to Rule 19-727.[8]   Judge Kramer conducted an evidentiary hearing on November 21, 2017.   Thereafter, Judge Kramer issued a Statement of Findings and Conclusions, in which she found, by clear and convincing evidence, that Respondent's acts constituted violations of Rules 19-301.1, 19-301.3, 19-301.4(a), 19-301.16(d), 19-308.1(b), 19-308.4(a) and (b).[9]   For the reasons explained herein, we conclude that the hearing judge's conclusions of law as to violations of the aforementioned Rules were supported by clear and convincing evidence.   Additionally, we sustain Petitioner's exception and hold that Respondent also violated Rule 19-308.4(d).

## FINDINGS OF FACT

We summarize and quote the hearing judge's findings of fact below.  Respondent was admitted to the Maryland Bar on December 20, 1983.  He is a solo practioner with offices located in Howard County, Maryland.  On March 11, 2001, Ms. Luen Mei Yu was involved in a car accident in Montgomery County, Maryland.  On November 25, 2002, Ms. Yu went to the law offices of Marc Ward, Esquire, in Frederick, Maryland to obtain representation with regard to injuries she sustained during the car accident.  Mr. Ward referred the case to Respondent.  Ms. Yu retained Respondent on a contingent fee basis to file suit against Terry Stupay, the alleged negligent driver of the other vehicle involved in the accident.

---

[8] After the Circuit Court discovered that Bar Counsel mistakenly indicated the wrong zip code for Respondent's address in its Motion for Order of Default, the court vacated its Order of Default.

[9] It is apparent from the record that this conclusion was a typographical error and the correct conclusion is that Respondent violated 19-308.4(c). We discuss this further in the opinion.

3

On March 11, 2004, Respondent, on behalf of Ms. Yu, filed a Complaint in the District Court of Maryland for Montgomery County to recover damages for Ms. Yu's injuries arising out of the March 11, 2001 automobile accident. On April 12, 2004, the court issued a summons to be served upon Mr. Stupay by May 12, 2004. "Respondent located an address for Defendant Stupay using an internet service, and attempted to serve the Defendant at that address by certified mail." Mr. Stupay was not served by May 12, 2004.

On September 14, 2005, the District Court of Maryland for Montgomery County dismissed the case pursuant to Maryland Rule 3-507[10] for lack of jurisdiction because the Defendant had not been served. Respondent never notified Ms. Yu that he was unable to serve Mr. Stupay and that her case had been dismissed because of the failure to serve the defendant.

> On November 4, 2005, Respondent filed a Motion to Defer the Effect of Rule 3-507 indicating that, 'Plaintiff now has a good current address for Defendant and will take steps to renew the summons and effectuate service promptly.' He stated further that he 'has diligently attempted to locate Defendant since the suit was filed.' On November 30, 2005, the District Court granted the motion and issued a second summons.

On June 10, 2009, nearly four years after the issuance of the second summons, Respondent requested that the District Court reissue a summons for Mr. Stupay. A third summons was issued on July 6, 2009 to the same address as the first summons.

---

[10] Maryland Rule 3-507(a) provides that, "[a]n action against any defendant who has not been served or over whom the court has not otherwise acquired jurisdiction is subject to dismissal as to that defendant at the expiration of one year from the last issuance of original process directed to that defendant."

4

Respondent filed another Motion to Defer Effect of Rule 3-507 on August 26, 2009. In his Motion, Respondent stated, "Plaintiff was unable to complete service due in part to the Clerk's premature dismissal of the case while the Summons was still valid and pending." He also stated that he "has diligently attempted to locate Defendant since this suit was filed." Respondent did not offer any supporting evidence of his attempts to serve Mr. Stupay. The Court granted the Motion on September 9, 2009. Respondent did not inform Ms. Yu that her case had been dismissed, that the court granted his motion to reopen the case, or that he was having trouble serving Mr. Stupay.

The case was dismissed again on November 24, 2010, pursuant to Maryland Rule 3-507, because the Defendant had not been served. There was no response from Respondent. "At this point, the statute of limitations had expired on Ms. Yu's case, and she was foreclosed from recovery for her injuries. Respondent failed to take any further action on behalf of Ms. Yu and he failed to advise her that her complaint had, once again, been dismissed." Respondent never attempted to serve Mr. Stupay by alternate service.

On June 14, 2004, Ms. Yu was involved in another collision in Montgomery County, Maryland. Ms. Yu retained Respondent, on an unknown date, to represent her in that case. On June 14, 2007, Respondent, acting on behalf of Ms. Yu, filed a Complaint in the District Court of Maryland for Montgomery County against Denis Lopez, the driver of the other vehicle involved, and Marcy Hunter, the alleged owner of the vehicle.

On May 20, 2009, almost two years later, the District Court dismissed the case pursuant to Maryland Rule 3-507 because Defendant Lopez had not been served.

5

Respondent filed a Motion to Defer Effect of Rule 3-507 on June 10, 2009. The hearing judge found in the 2004 claim against Denis Lopez:

> In the Motion Respondent stated, 'Plaintiff now has a good current address for [the] Defendant[s] and will take steps to renew the summons and effectuate service promptly.' Respondent stated further that he 'has diligently attempted to locate [the] Defendant[s] since this suit was filed.' Respondent did not offer any evidence of what attempts were made to effectuate service. The District Court vacated the dismissal on June 26, 2009.

As of September 27, 2010, pursuant to Maryland Rule 3-507, the District Court had dismissed the case because Defendant Lopez had not been served. On October 22, 2010, Respondent filed another Motion to Defer Effect of Rule 3-507. In his Motion, Respondent stated that "there was good cause for delay in service due to [the] inability to locate either Defendant, despite good faith efforts to do so." Respondent, however, failed to offer any evidence of his attempts to effectuate service. The court denied the motion on November 1, 2010.

Roughly three weeks later, Respondent requested that the District Court reconsider its denial of his Motion to Defer Effect of Rule 3-507. "Again, Respondent failed to provide any evidence of what good faith efforts were made to effectuate service on the Defendants." On December 27, 2010 the District Court denied the motion. In its denial, the court stated that there was no "evidence of any efforts to reissue or serve the unserved defendant." The hearing judge found:

> Throughout the pendency of the representation, the Respondent failed to promptly inform Ms. Yu about his difficulties serving the Defendants, failed to keep Ms. Yu reasonably informed about the status of the matter, and failed to promptly comply with her reasonable requests for information. At this point, the statute of limitations had expired on Ms. Yu's case and she was foreclosed from recovery for her injuries.

6

Bar Counsel and Respondent disagreed about Ms. Yu's fluency in English. The hearing judge discussed Ms. Yu's command of the English language "because it [wa]s, in part, Respondent's explanation for why he did not communicate with Respondent in writing." The hearing judge explained:

> Ms. Yu was born in Indonesia and has been in the United States since 1985. She is a United States citizen who completed her education to become a Licensed Practical Nurse ("LPN") in the United States. . . . Ms. Yu speaks English at her job and has been an LPN for thirteen years. Ms. Yu was able to testify and respond to questions posed to her [during the disciplinary proceedings in the Circuit Court.] However, at one time in her testimony, Ms. Yu had difficulty with the term: 'fax transmission sheet.' Ms. Yu's writing in English communicates effectively, even if her English is not perfect. Ms. Yu's understanding of the written English language is not as clear. She testified that she signed the Contingent Fee Retainer Agreement with Respondent without first reading it. When Respondent asked Ms. Yu to read the Contingent Fee Retainer Agreement in court, Ms. Yu appeared extremely uncomfortable.

Judge Kramer concluded that Ms. Yu had a "functional" command of the English language, "although she may struggle with unfamiliar terms or vocabulary." According to the hearing judge:

> Respondent contend[ed] that he and Ms. Yu mutually agreed to communicate orally and not in writing. Ms. Yu did not address this contention in her testimony. Ms. Yu indicated that it was she who would initiate communication with Respondent. She would call Respondent from time to time to check on the progress of her cases, and on each occasion, Respondent would update Ms. Yu's address and phone number and indicate that her cases were 'in progress' or that he was trying to get more money from the other side. Ms. Yu insisted that Respondent never indicated to her in these conversations that there were any difficulties with her cases.
>
> Respondent claim[ed] that Ms. Yu has a poor memory of what occurred in her cases. There was some support for this position. At the time of the hearing, Ms. Yu was adamant that the first auto accident in which Respondent represented her had occurred in 1998.[11]

---

[11] Documentation shows that the accident occurred in 2001.

7

Although "Ms. Yu's refusal to concede that she was incorrect on the date of the accident impaired her credibility," the hearing judge did not believe that Ms. Yu intentionally gave false testimony. Rather it was the hearing judge's impression that Ms. Yu "stubbornly adhered to her version of the events," even when she was mistaken about some of the details.

Judge Kramer found that Ms. Yu's memory of specific facts was not completely accurate:

> In one instance, Ms. Yu changed her testimony. On direct examination, Ms. Yu testified that when she went to Marc Ward's office, she thought Respondent was Mr. Ward. Ms. Yu changed her testimony on cross-examination. When confronted, she said she met with Mr. Ward in a small room, and then met with Respondent.
>
> There was also an occasion when Respondent changed his testimony. He testified that for Ms. Yu's first auto accident, a hit and run, Ms. Yu had only given him a name and phone number for the other driver, and that Ms. Yu had gone to the police station to file a report after the accident had happened.

On cross-examination, however, Respondent admitted that a police officer interviewed Ms. Yu at the scene of the accident and completed a police report.

> The police report contained a tag number for the vehicle that collided with Ms. Yu, and that tag number was provided by Ms. Yu to the police officer. When asked about the tag number for the other car on the police report, Respondent indicated that it was probably a temporary tag that could not be traced.

Respondent and Ms. Yu agree that they met at Respondent's office in December 2010, but they disagree on the "purpose and outcome of that meeting." Ms. Yu contends that the two of them met so that she could obtain Respondent's representation for another car accident in which she had been involved. Respondent agreed that they discussed a third

8

automobile accident case but stated that he had declined to represent Ms. Yu in that matter. He asserted that the meeting was held "at his request to inform Ms. Yu that her cases had been dismissed and to let her know that he would hold the files for a period of three years before they would be destroyed, per his office policy." Ms. Yu adamantly denied that this discussion took place at that meeting.

The hearing judge found Ms. Yu to be more credible on the issue of whether Respondent informed Ms. Yu of the dismissal of her cases in December 2010 because it was a significant fact that Ms. Yu was unlikely to forget. Judge Kramer found that "Ms. Yu's conduct was consistent with her contention that she was not aware that her cases were dismissed. She continued to try to contact Respondent, first by leaving telephone messages for him, and later by sending him a letter by fax and one by mail." Ms. Yu also reached out to a friend's brother who was an attorney and discussed her cases with that attorney.

Further, according to the hearing judge, "Respondent's subsequent conduct was not consistent with his position that he had told Ms. Yu in 2010 that her cases were dismissed. He did not return phone calls from Ms. Yu. He did not respond to the November 23, 2014 letter from Ms. Yu." Judge Kramer reasoned that "had Respondent previously told Ms. Yu about the dismissal of her cases and the office policy of destroying files, one would expect that he would reply to this letter reminding Ms. Yu of that conversation. He did not do so."

Ms. Yu testified that after the December 2010 meeting she called Respondent numerous times and never got a response. The hearing judge explained her findings:

9

[A]s a result, Ms. Yu sent two letters to Respondent asking for the return of her files. The first letter was faxed in July 2014, and the second was mailed to Respondent in November 2014. Respondent indicated he did not get the July 2014 letter until he received it as an enclosure to the November 2014 letter, and he indicated that he no longer had a fax machine as of 2012.

Interestingly, Ms. Yu is the only party who documented her position in writing. She wrote to Respondent in 2014 asking Respondent to return her files. In her letter, she indicated that she had left numerous telephone messages for Respondent that were not returned. Respondent did not respond to this letter in writing. At the time of the hearing, when asked why he did not reply to Ms. Yu's November 2014 letter, Respondent indicated that he had delays in receiving mail.

Respondent attributed this delay to his inability to retrieve the mail from his office's mail chute. He also offered as a reason for his non-response that Ms. Yu did not list her name or address on the envelope. "He then corrected himself, and stated that he probably did not open the envelope when it arrived because it may have been a holiday." The hearing judge found Respondent's response to the question about why he did not respond to the November 2014 letter to be "circular and not credible" and that "[Respondent] seemed to give a lot of detail in order to buy time to think of an answer."

Respondent's communication with Bar Counsel went from inconsistent to nonexistent. Respondent only sent one letter to Bar Counsel. In that letter, dated April 7, 2016,

Respondent detailed his response to the allegations in Ms. Yu's complaint. He stated that he did not receive Ms. Yu's letter of July 2014 'until he received it as an attachment to her November 2014 letter.' The Respondent stated further that he was not able to give Ms. Yu a copy of her file because the files had been destroyed pursuant to his office's retention policy, which, he alleged was to destroy his files three years after he closed the case. The Respondent further stated that he did attempt to locate the files but was unable to do so 'after a diligent search lasting over a month.'

10

On April 29, 2016, Bar Counsel sent another letter to Respondent notifying him that the matter would be docketed and asking him to respond by May 13, 2016 to another letter Ms. Yu had mailed to Bar Counsel. Respondent did not respond to that letter or Bar Counsel's follow-up letters dated May 31, 2016, June 9, 2016, and June 21, 2016. Each letter contained a request that Respondent respond within seven days of the date of the letter. At the disciplinary hearing, "Respondent indicated that he was aware of his obligation to reply, but was intimidated by getting letters from the Attorney Grievance Commission and instead of acting he 'ducked and covered.'"

Respondent was personally served with the Petition for Disciplinary or Remedial Action on June 28, 2017 but did not respond within 15 days. "Respondent testified that he thought he had 60 days to file the response. Later he realized he was late when he attempted to file his response within 60 days." Respondent, however, never requested an extension of time in which to file an answer. On August 3, 2017, Bar Counsel mailed discovery to Respondent. Respondent indicated that he received the letter a month later because it had the wrong zip code. "On cross-examination, Respondent admitted that the interrogatories had the correct zip code, and that he had not made a timely response."

II.

**CONCLUSIONS OF LAW**

The hearing judge concluded that Respondent violated the following Maryland Attorneys' Rules of Professional Conduct over the course of his representation of Ms. Yu and the disciplinary proceedings.

11

## Rule 19-301.1 Competence

Respondent violated Rule 19-301.1 in his representation in both of Ms. Yu's matters. Although neither case involved complex legal issues requiring specialized knowledge or training, he failed to perform "[b]asic skills for locating defendants and serving them with process[.]" Respondent failed to describe any other efforts or alternative methods of service of process he had used when his attempt of service by certified mail was unsuccessful. Judge Kramer found that, "[h]is lack of efforts eventually resulted in the [dismissal of both of Ms. Yu's cases, pursuant to Maryland Rule 3-507,] after the statute of limitations had run, depriving Ms. Yu of any ability to seek monetary damages for her injuries."

## Rule 19-301.3 Diligence

Respondent demonstrated a lack of diligence in his representation because he "failed to timely make efforts to locate and serve the opposing parties in both of Ms. Yu's cases, and did not follow up when his initial efforts were unsuccessful." Judge Kramer recognized that Respondent's only excuse for not using the license plate number described in the police report to locate Mr. Stupay was that "it was probably a temporary tag from out of state, as if such a tag could not be traced to an owner." She opined that, "[o]ne would expect a lawyer to inquire further into the tag number to assist in locating Defendant Stupay, or in identifying the owner of the vehicle, who may be able provide an address for Defendant Stupay."

12

## Rule 19-301.4 Communication

Respondent violated Rule 19-301.4(a)(3) when he failed to promptly comply with Ms. Yu's reasonable requests for information about her cases. He failed to keep Ms. Yu reasonably informed of the important developments in both of her cases, such as his difficulty locating and serving the defendants, the dismissal of her cases under Maryland Rule 3-507 for failure to prosecute, or of the efforts he was making to have the court defer the dismissal. The hearing judge explained:

> Ms. Yu credibly testified that it was she who would initiate contact with Respondent by telephone. Ms. Yu indicated that Respondent would routinely ask for an update on her address and telephone numbers, and would tell her that he was talking to [the] other side to get more money for her case and that her case was 'in progress.' Had she been aware of the difficulties with locating and serving the opposing parties in each of her cases, Ms. Yu may have wanted to hire a private process server or private investigator to locate the defendants. She may have wished to seek other legal counsel. She was deprived of these opportunities by the lack of communication.

## Rule 19-301.16 Declining or Terminating Representation

Judge Kramer concluded that:

> Respondent violated Rule 1.16(d) in failing to protect Ms. Yu's interests at the time he abandoned efforts on her behalf. He did not give her timely and reasonable notice of the difficulties he was having in pursuing her cases, and failed to surrender her papers to her so that she could pursue other options.

## Rule 19-308.1 Bar Admission and Disciplinary Matters

Respondent violated Rule 19-308.1(b) when he failed to respond to Assistant Bar Counsel's letters of April 29, 2016, May 31, 2016, June 9, 2016, and June 21, 2016. Furthermore, Respondent intentionally misrepresented the facts to Bar Counsel in an effort to excuse his misconduct. Judge Kramer stated:

13

Respondent sent a letter to Assistant Bar Counsel responding to Ms. Yu's allegations on April 7, 2016. In the letter, Respondent stated that he elected to communicate in person with Ms. Yu because of her weak skills with the English language, and because she had informed Respondent that 'she was frequently away from her Maryland address for long periods of time, spending several months a year in her native [country] China, and that she was unable to receive mail during those periods of absence.' Ms. Yu was adamant that she never told Respondent that she was away for months at a time, or that she was unable to receive mail. In fact, Ms. Yu testified that she works full time and has never left home for more than four weeks at one time for an international trip. When she did leave, there was someone at her home to receive mail.

*        *        *

Furthermore, in the letter to Bar Counsel of April 7, 2016, Respondent indicates that he left a voice message for Ms. Yu about one month after receiving her November 2014 letter telling her he could not locate her file. Ms. Yu adamantly denies this, and this court finds her more credible on that issue. There were other misstatements in Respondent's April 7, 2016 letter, including Respondent's indication that Ms. Yu had failed to get a license [plate] number for [the vehicle operated by] the opposing party in her 2001 accident. The license [plate] number was included in the police report which was provided by the District Court as a part of its official record.

### Rule 19-308.4 Misconduct

The hearing judge found by clear and convincing evidence that Respondent violated Rule 19-308.4(a) by violating the Rules of Professional Conduct detailed above. Respondent violated Rules 19-308.4(c), and not 19-308.4(b)[12] when Respondent intentionally made false statements in his April 7, 2016 letter to Assistant Bar Counsel. Additionally, we note that Respondent committed an 8.4(c) violation when he concealed from Ms. Yu the fact that her cases had been dismissed and that the statute of limitations

---

[12] We explain *infra*, page 19, the hearing judge's error in finding a Rule 19-308.4(b) violation instead of a Rule 19-308.4(c) violation.

had run.  *See Attorney Grievance Comm'n of Maryland v. Brown*, 426 Md. 298, 324, 44

A.3d 344, 360 (2012) (opining that an attorney commits a 19-308.4(c) violation "when

[the] attorney conceals material information from his or her client, despite not

misrepresenting explicitly the information.").  The hearing judge did not find, however,

that Respondent's representation of Ms. Yu constituted a violation of Rule 19-308.4(d)

(engaging in conduct prejudicial to the administration of justice).

## Aggravating and Mitigating Factors[13]

The hearing judge noted Respondent's prior reprimand as an aggravating factor.

She did not find Respondent sufficiently remorseful to constitute a mitigating factor.  With

regard to the aggravating and mitigating factors, Judge Kramer said:

> Assistant Bar Counsel introduced evidence of a May 25, 2015
> reprimand Respondent received for violations of Rule 1.1, 1.3, 1.4, and 1.16
> of the Maryland [Attorneys'] Rules of Professional Conduct for two separate

---

[13] A court's consideration of aggravating and mitigating factors includes:
  (1) prior attorney discipline;
  (2) a dishonest or selfish motive;
  (3) a pattern of misconduct;
  (4) multiple violations of the MARPC;
  (5) bad faith obstruction of the attorney discipline proceeding by intentionally
  failing to comply with [rules or orders of the disciplinary agency];
  (6) submission of false evidence, false statements, or other deceptive practices
  during the attorney discipline proceeding;
  (7) a refusal to acknowledge the misconduct's wrongful nature;
  (8) the victim's vulnerability;
  (9) substantial experience in the practice of law;
  (10) indifference to making restitution or rectifying the misconduct's
  consequences;
  (11) illegal conduct, including that involving the use of controlled substances;
  and (12) likelihood of repetition of the misconduct.

See *Attorney Grievance Comm'n of Maryland v. Smith*, 457 Md. 159, 220–21, 177
A.3d 640, 676–77 (2018).

matters, each involving failing to serve a defendant and failing to communicate with his client.

Respondent indicates that this reprimand was for conduct that occurred after he had represented Ms. Yu, and that he took the reprimand seriously and changed his office practices to ensure that he documented client issues in writing. Notwithstanding this explanation, Respondent failed to be diligent in responding to letters from Bar Counsel dated April 29, 2016, May 31, 2016, June 9, 2016, and June 21, 2016.

The Court notes the similarity of the situations, in that the prior reprimand involved two cases in which Respondent was unable to serve the defendants, failed to communicate with his clients, and the clients' cases were dismissed. Even if the Yu matters happened before the reprimand, the other cases combine with this one to show a pattern of conduct that is not in conformity with the standards to which attorneys are expected to conduct their professional activities.

Surely Respondent cannot contend that he was unaware of the mandate for attorneys to diligently pursue their filed litigation matters and to communicate with their clients until he received the reprimand. The Court finds the prior reprimand to be an aggravating factor, notwithstanding that the conduct underlying that reprimand happened after the conduct giving rise to this case.

Respondent started his cross-examination of Ms. Yu by saying 'I'm sorry for the way things worked out.' This statement, although sounding like an apology does not demonstrate that Respondent takes any responsibility for the outcome of Ms. Yu's legal matters or her dissatisfaction with Respondent's failure to communicate.

Respondent mentioned on a number of occasions what he should have done 'in hindsight' as if the consequences of his conduct could not have been predicted in the present. . . . [T]he use of the phrase 'in hindsight' suggests that Respondent felt that his conduct was reasonable at the time, but now with the benefit of hindsight he realizes that it was not. . . . [T]his does not demonstrate Respondent's acknowledgment of any wrongdoing.

Respondent testified that he believe[d] that he did everything he could to protect Ms. Yu's interests. The [Circuit] Court finds by clear and convincing evidence that Respondent is not truly remorseful for his conduct.

Respondent points out that he did not ask Ms. Yu to reimburse him for the court costs advanced, totaling less than $100 for both of her cases. The [Circuit] Court does not find that this mitigates Respondent's culpability.

Upon our review, we note six additional aggravating factors. Respondent engaged

in a pattern of misconduct which is evidenced by his multiple rule violations and previous

16

reprimand for similar conduct. Respondent engaged in a bad faith obstruction of the disciplinary proceedings by refusing to respond to Bar Counsel's repeated requests for information regarding Respondent's representation of Ms. Yu. *See, e.g.*, *Attorney Grievance Comm'n of Maryland v. Bleecker*, 414 Md. 147, 177, 994 A.2d 928, 946 (2010) (acknowledging the aggravating factor that the attorney's knowing failure "to respond to several written demands for information . . . thwart[ed] Bar Counsel's efforts to investigate [his client's] complaint"). Additionally, we note Respondent's false statements to Bar Counsel as an aggravating factor. Respondent's substantial experience in the practice of law is an aggravating factor due to Respondent's admission to practice law since 1983. Finally, we note that there is a likelihood of repetition of misconduct when we consider that Respondent was previously reprimanded for strikingly similar misconduct.

## III.

In an attorney discipline proceeding, this Court accepts the hearing judge's findings of fact unless there is clear error. *Attorney Grievance Comm'n v. Donnelly*, _ Md. _, _ A.3d _ (2018). Neither party filed exceptions to the hearing judge's factual findings; thus, we deem those factual findings established by clear and convincing evidence. *Attorney Grievance Comm'n of Maryland v. McLaughlin*, 456 Md. 172, 190, 171 A.3d 1205, 1215 (2017). We review de novo the hearing judge's conclusions of law and determine whether clear and convincing evidence demonstrates that Respondent violated the MARPC. *Attorney Grievance Comm'n of Maryland v. Thomas*, 445 Md. 379, 391, 127 A.3d 562, 569 (2015). Based upon the evidence and legal conclusions, we conclude that the hearing judge's conclusions of law are supported by clear and convincing evidence.

17

IV.

Petitioner filed two exceptions to the hearing judge's conclusions of law. Petitioner excepted to the hearing judge's failure to find that Respondent violated 8.4(d). MARPC 19-308.4(d) provides that "[i]t is professional misconduct for an attorney to engage in conduct that is prejudicial to the administration of justice[.]" This conduct includes "failing to represent a client in an adequate manner[,] repeatedly failing to respond in a timely manner to Bar Counsel's inquiries[,as well as] failing to keep a client informed about the status of a case[.]" *Attorney Grievance Comm'n of Maryland v. Brigerman*, 441 Md. 23, 40, 105 A.3d 467, 477 (2014) (cleaned up).

Respondent failed to adequately represent Ms. Yu in both of her personal injury cases. He failed to do the bare minimum in locating and properly serving the defendants in the cases. Respondent failed to inform Ms. Yu that he was having difficulty in locating the defendants, that her cases had been dismissed due to his failure to properly serve the defendants, and that the statute of limitations had run on both of her cases. Respondent's decision to "duck and cover," or in other words, *ignore*, Bar Counsel's repeated requests for information adversely "impact[s] the image of the legal profession." *See id.* We, therefore, sustain Petitioner's exception and hold that Respondent violated MARPC 19-308.4(d) by clear and convincing evidence.

Petitioner excepted to the hearing judge's conclusion that Respondent violated 19-308.4(b) because Petitioner did not charge Respondent with this violation. It is apparent that the hearing judge's conclusion that Respondent violated Rule 19-308.4(b) was merely a typographical error. We surmise from the language she used that she intended to

18

conclude that Respondent violated Rule 19-308.4(c), having found that Respondent "intentionally made false statements in his April 7, 2016 letter to Assistant Bar Counsel." It is a violation of Rule 19-308.4(c) to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation[.]" Respondent attempted to excuse his failure to communicate with Ms. Yu by misrepresenting to Bar Counsel that Ms. Yu was out of the country for extended periods of time and that she could not receive mail during that time. Ms. Yu, whom the hearing judge found to be credible, testified that she was gone no more than four weeks in any given year and that there was always someone at her home to receive her mail. Respondent also intentionally misrepresented that he and Ms. Yu agreed to only communicate in person due to Ms. Yu's alleged poor command of the English language. The hearing judge found, however, that Ms. Yu had an adequate command of the English language and that Respondent and Ms. Yu's conduct did not demonstrate such an agreement to communicate only in person.[14] For example, Ms. Yu called and mailed Respondent letters requesting updates on her cases and Respondent did not respond to her requests either in writing, by phone, or in person. Furthermore, Respondent's only excuse for his failure to communicate was a claim that he did not have a return address for Ms. Yu, despite the fact that he "he routinely ask[ed] for an update on [Ms. Yu's] address." All of Respondent's intentional misrepresentations clearly demonstrate a violation of Rule 19-308.4(c). That finding was established by clear and convincing evidence. Therefore, given

---

[14] Even if there was such an agreement between Ms. Yu and Respondent, it does not excuse Respondent's failure to reasonably communicate with Ms. Yu in person or in writing regarding the status of her cases.

the charges and the findings of fact it is obvious that the hearing judge intended to conclude that Respondent violated Rule 19-308.4(c).

## V.

## SANCTION

Our goal in sanctioning an attorney has always been "to protect the public, to deter other lawyers from engaging in violations of the Maryland Rules of Professional Conduct, and to maintain the integrity of the legal profession." *See Smith*, 457 Md. at 220, 177 A.3d at 676. Although we "evaluate the facts and circumstances of each case to ensure that the lawyer's sanction is commensurate with the gravity and intent of the [attorney's] misconduct," we review our treatment of similar misconduct, pointedly, the failure to communicate with clients and the eventual abandonment of client matters, to fashion the appropriate sanction for Respondent's misconduct in the present case. *See Attorney Grievance Comm'n of Maryland v. Davy*, 435 Md. 674, 707, 80 A.3d 322, 341 (2013).

We do not look favorably on attorneys who fail to communicate with their clients in any "meaningful manner during the pendency of representation." *See Attorney Grievance Comm'n of Maryland v. Williams*, 446 Md. 355, 376, 132 A.3d 232, 244 (2016) (disbarring an attorney partly because, "[t]he egregious nature of [the attorney's] actions to conceal his incompetence and lack of diligence from his client . . . [could not] be tolerated.") We disbarred an attorney for abandoning client matters in *Attorney Grievance Comm'n of Maryland v. Dunietz*, 368 Md. 419, 795 A.2d 706 (2002). In that case we noted that the attorney's incompetence, failure to keep his client informed of the status of the two matters and the later abandonment of the matters, along with his repeated failure to respond

20

to Bar Counsel's request for information warranted disbarment. *Id.* at 431, 795 A.2d at 712. Judge Harrell, writing for the Court, explained our "need to protect the public from further victimization by a recalcitrant attorney and to motivate other attorneys to adopt appropriate practices in the future[.]" He stated:

> Respondent's continu[ed] disregard for the attorney grievance process, his apparent indifference to the tenets of his chosen profession, the dereliction of his duties to his client, and his ostensible lack of remorse for his misconduct warrant a sanction of this severity. Respondent offer[ed] this Court no circumstances to mitigate or extenuate his neglect of Mr. Park's two legal matters. Respondent's misconduct [wa]s particularly troublesome in light of his client's limited ability to speak and understand English, necessitating heightened reliance upon Respondent to assist him in navigating an unfamiliar legal system.

*Id.* at 431, 795 A.2d at 712–13 (internal quotation marks omitted).

In *Attorney Grievance Comm'n of Maryland v. Bleecker*, we disbarred an attorney who failed to inform his client that her personal injury case had been dismissed. 414 Md. 147, 176, 180, 994 A.2d 928, 945, 947 (2010). We noted Mr. Bleecker's systematic concealment from his client that the statute of limitations had run was compounded by his failure to respond to Bar Counsel's written request for information and his previous reprimands for similar conduct. *Id.* at 176, 994 A.2d at 945.

In *Attorney Grievance Comm'n of Maryland v. Brigerman*, we recognized, however, that, in light of several mitigating factors, a sanction less severe than disbarment was appropriate for an attorney who intentionally misrepresented facts to his client and Bar Counsel, failed to cooperate with Bar Counsel, and failed to perform any legal work for his client. 441 Md. 23, 43, 105 A.3d 467, 478 (2014). In suspending the attorney indefinitely, we noted that he had no previous disciplinary matters and that "much of [the attorney's]

21

misconduct resulted from his personal issues, which took an emotional toll on him during this time, rather than solely a dishonest or selfish motive." 441 Md. at 43, 105 A.3d at 478.

In the instant case, however, there are no mitigating factors, and we are moved for similar reasons as those presented in *Dunietz* to protect the public by way of disbarment of Respondent. Like *Bleecker*, the Respondent's concealment of important information, such as the dismissal of Ms. Yu's matters and the expiration of the statute of limitations, left Ms. Yu with no means of redress. Obviously, clients seek representation to have the matters resolved, not to have them ignored. In this case, Respondent,

> [i]n his two motions to defer dismissal, certified to the court that he had new addresses for [the] Defendant[s], but all three summonses issued were to the same address listed on the initial pleading. Respondent never enumerated any other efforts to locate or serve the opposing party when the certified mail was unsuccessful. Additionally, he failed to explore alternate methods of service such as service by publication. His lack of efforts eventually resulted in the case being dismissed pursuant to Maryland Rule 3-507 after the statute of limitations had run, depriving Ms. Yu of any ability to seek monetary damage recovery for her injuries.

Ms. Yu's requests for information regarding her cases were met with Respondent's false statement that he "was talking to [the] other side to get more money for her case," when in fact he had not effectuated service of process with "the other side." He did not fully disclose the material facts to Ms. Yu. In an attempt to avoid the blame for his failure to communicate with Ms. Yu, Respondent misrepresented to Bar Counsel and the hearing judge that Ms. Yu made frequent trips out of the country and that she had a weak command of the English language. Respondent's misstatements to Bar Counsel and the hearing judge compound Respondent's flagrant abandonment of Ms. Yu's cases. *See Attorney Grievance Comm'n of Maryland v. Thomas*, 440 Md. 523, 558, 103 A.3d 629, 649 (2014)

22

("Disbarment is warranted in cases involving flagrant neglect of client affairs, including the failure to communicate with clients or respond to inquiries from Bar Counsel.").

Furthermore, Respondent has not offered any mitigating factors that convince us to impose a sanction less severe than disbarment. Unlike *Brigerman*, Respondent was not experiencing any personal problems at the time of his misconduct. At the time of oral argument before this Court, Respondent made reference to a 2013 domestic violence incident involving his family members. That explanation, however, does not mitigate Respondent's misconduct that began in 2002. Furthermore, Respondent has not expressed genuine remorse and has shifted the blame to his client for his failure to communicate to her information about her cases. In light of the aggravating factors, the lack of mitigating factors, and Respondent's general misconduct, the appropriate sanction in this case is disbarment. This order is effective 30 days after the filing of this opinion.

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS PURSUANT TO MARYLAND RULE 19-709(d), FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST RESPONDENT.**